UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL BERLANGA,

    Petitioner,

v.

O. C. WINN, *Acting Warden*,

    Respondent.

Case No. 2:14-cv-13752
Honorable Laurie J. Michelson

**AMENDED OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS [1]**

    In 2010, Petitioner Michael Berlanga was convicted of sexually abusing his daughter, SB, and her friend, KS. Berlanga was sentenced to 20- to 40-years in prison. He petitions this Court for a writ of habeas corpus, primarily alleging that he was deprived of a fair trial when the prosecutor bolstered the credibility of SB and KS and that the trial court abridged his rights under the Confrontation Clause and to present a complete defense in restricting the cross examination of KS on a single issue. (*See* R. 1.)

    The Court disagrees. The prosecutor's remarks during her closing argument were not improper, and even if they were, they did not deprive Berlanga of a fundamentally fair trial. And the state trial court's limits on the cross examination of KS on one issue did not violate Berlanga's constitutional rights to confront her or present a complete defense. For these and the other reasons set out below, this Court will not issue Berlanga a writ of habeas corpus.

I.

A.

The Michigan Court of Appeals recited the events leading to Berlanga's convictions as follows:

> Defendant was convicted of sexually assaulting his 13-year-old daughter, SB, and her 13- year-old friend, KS, in 2009.
>
> The prosecution presented evidence that in April 2009, defendant provided alcohol to four minors in his home, including the two victims . . . . When the girls became intoxicated, defendant carried KS, who had "blacked out," to SB's downstairs bedroom, where he digitally penetrated her. After SB came into the bedroom, defendant touched her breasts and vagina. There was also evidence of a separate incident in June 2009, in which defendant again touched SB's breasts while she was in her bedroom.
>
> The defense argued that neither victim's testimony was credible or consistent, that the victims were likely mistaken given their level of intoxication, and that they fabricated the stories as revenge for defendant's mistreatment of SB's mother.

*People v. Berlanga*, No. 298176, 2011 WL 4424398, at *1 (Mich. Ct. App. Sept. 22, 2011) (paragraphing altered).

On March 25, 2010, Berlanga "was convicted of third-degree criminal sexual conduct, MCL 750.520d(1)(a), and three counts of second-degree criminal sexual conduct, MCL 750.520c(1)(b)." *Id.*

Berlanga was later "sentenced as an habitual offender, fourth offense, MCL 769.12," and given "concurrent prison terms of 20 to 40 years for each conviction." *Id.*

B.

Berlanga appealed (raising none of the claims he now asserts), but the Michigan Court of Appeals affirmed. *See generally People v. Berlanga*, No. 298176, 2011 WL 4424398 (Mich. Ct. App. Sept. 22, 2011). The Michigan Supreme Court then denied Berlanga's request for further direct appeal. *People v. Berlanga*, 492 Mich. 864, 819 N.W.2d 881 (2012).

Berlanga then returned to the state trial court by filing a motion for relief from judgment. In an explained order, the state trial court denied the motion. (R. 6, PID 930–37, *People v. Berlanga*, No. 09-229512, slip op. (Mich. 6th Cir. Ct. Oct. 3, 2013).) Berlanga sought leave to appeal from the Michigan Court of Appeals, but the state appellate court denied the application "for lack of merit in the grounds presented." *People v. Berlanga*, No. 318651, slip order (Mich. Ct. App. Feb. 21, 2014), *available at* (R. 6, PID 1187). Berlanga then sought leave from the Michigan Supreme Court, but it denied leave because Berlanga had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Berlanga*, 497 Mich. 854, 852 N.W.2d 179 (2014).

This petition for a writ of habeas corpus followed.

## II.

Berlanga raises five claims for habeas corpus relief. (*See generally* R. 1.) The Court addresses them all but in a different order than Berlanga presents them.

### A.

The Court begins with Berlanga's fourth claim for relief: that in prohibiting KS from being questioned about the details of the sexual abuse that KS's family members had experienced, the trial court violated his right to confront his accusers under the Sixth Amendment. (*See* R. 1, PID 36.)

Before addressing this claim, additional factual and legal background are necessary.

#### 1.

At trial, Berlanga's defense was that KS's and SB's allegations of abuse were not true. Berlanga's counsel believed that to make this argument, he would have to show that KS and SB learned of sexual abuse apart from Berlanga's abuse. This is because, as children, the jury might

3

presume that, absent Berlanga's conduct, KS and SB would have no knowledge of sexual abuse. Thus, counsel sought to show that KS had learned about sexual abuse from her family members, several of whom had been sexually abused. In pursuit of this, Berlanga's counsel stated in his opening remarks, "They're not strangers to sexual abuse." (R. 6, PID 426–27.)

Following opening statements, the prosecutor asked for a side bar and objected to the "not strangers" statement. After the trial court excused the jury, Berlanga's counsel argued that KS's two sisters, her aunt, and her cousin had been subjected to sexual abuse and that the jury should learn those facts "so when they are back there deliberating saying, how could this kid . . . come up with this, what's another explanation other than it happened, the jury should know . . . this poor child grew up with it in her home." (R. 6, PID 432.) The basis of counsel's argument was that "in a criminal sexual conduct case with a child[,] the defendant has a right to present a defense and he has a right to fully confront his witnesses." (R. 6, PID 431.) The trial court largely agreed with Berlanga's position: "I will allow you to ask the questions, however, I don't want any probing into the circumstances and I don't want you to ask her about every single family member that has been the victim of sexual abuse." (R. 6, PID 437.)

Accordingly, during the cross-examination of KS, Berlanga's counsel elicited this testimony:

> [KS:] Are you asking me if anyone in my family, asked me if it's happened to me or if it's happened to anyone in my family?
>
> [DEFENSE COUNSEL:] Well, I'm asking you in general terms has -- have you ever talked about sexual abuse, in general, with family members?
>
> A. Oh, yes.
>
> Q. Okay, have you talked about it happening with other people in your family?
>
> A. To other people in my family?
>
> Q. Yes.
>
> A. Yes.

Q. Okay. All of that, you've had those discussions before any of this came up?

A. Yes.

Q. In fact, isn't it true you told [someone] that just about every girl in your family's had something like this happen?

A. Yes.

Q. That must be tough, right?

[PROSECUTOR]: Judge, objection as to relevance.

[DEFENSE COUNSEL]: I'll move on.

THE COURT: Thank you.

(R. 6, PID 569.)

## 2.

As an initial matter, the Court will assume without deciding that Berlanga need not clear 28 U.S.C. § 2254(d) to be granted habeas corpus relief on his claim that his Confrontation Clause rights were violated. (The Court makes this assumption because it should "look through" the Michigan Supreme Court's and Michigan Court of Appeal's on-the-merits-but-unexplained orders to the state trial-court opinion, *Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir. 2010) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)), and it is at least unclear whether the state trial court adjudicated Berlanga's Confrontation Clause claim "on the merits" (*see* R. 6, PID 930–37).)

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Id.* (internal quotation marks and alteration omitted). That said, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or

interrogation that is repetitive or only marginally relevant." *Id.* A criminal defendant demonstrates a violation of the Confrontation Clause, if "[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defendant's] counsel been permitted to pursue his proposed line of cross-examination." *Id.*

**3.**

Applied here, the Court finds that the state trial court did not violate Berlanga's Confrontation Clause rights by limiting the questioning of KS on one issue. To make out his defense that KS and SB's allegations of abuse were not true, Berlanga wanted to demonstrate that KS and SB had some way to learn about abusive acts of which children may not normally be aware. The trial court permitted Berlanga to establish this premise of his defense: he allowed Berlanga's counsel to bring out through the cross-examination of KS that (1) other members in her family had suffered sexual abuse, (2) that she had talked with her family members about sexual abuse, and (3) that she had talked with them before Berlanga's alleged conduct. Nothing more was needed to show that KS had knowledge from which she could have alleged that Berlanga had sexually abused her.

Berlanga maintains, however, that counsel should have been able to ask about the *details* of the abuse suffered by KS's family members. (R. 1, PID 36.) His inability to do so did not violate the Confrontation Clause. The state trial court properly spared KS and her family members the harassment and embarrassment of recounting details of sexual abuse that, apparently, would have added little to Berlanga's case. For the opposite to be true, it would have to at least be the case that KS's family members suffered abuse in a substantially similar manner to that alleged by KS. But Berlanga cites no such evidence. He merely says, "*perhaps*, some family members were at a young age as well, and face similar circumstances which [KS] could

have heard of, and claimed Defendant performed the same on her." (R. 1, PID 20 (emphasis added).) It is true that KS's sister had alleged that she had been abused in a manner matching KS's allegations against Berlanga, but cross-exam on that detail could hardly have been helpful to Berlanga: KS's sister had alleged that Berlanga was her abuser. (R. 6, PID 436.)

In his reply brief, Berlanga shifts focus from KS's family members' abuse and asserts that *KS* was subjected to sexual abuse by *her* father (R. 8, PID 1259), and that the trial court should have allowed KS to be questioned about that abuse. This assertion does not alter the Court's analysis. For one, Berlanga cites no evidence to back his allegation, and the record suggests that KS's prior accusation of abuse was against her babysitter, not her father. (R. 6, PID 434–36.) At a minimum, nothing Berlanga cites suggests that the trial court, or even trial counsel, was aware that KS had been abused by her father. And even assuming that KS had been sexually abused by her father, and that the trial court and counsel were made aware of this fact, Berlanga has not shown that the circumstances and manner of the prior abuse (other than father-daughter) were substantially similar to KS's allegations against Berlanga. Given all of this, the Court maintains its conclusion that the state trial court's balancing of Berlanga's right to cross examine KS against the harassment that KS and her family members would have suffered from further questioning and the limited relevance was consistent with the Confrontation Clause. *See Van Arsdall*, 475 U.S. at 678.

In sum, on *de novo* review, the Court finds that the trial court's limitations on the cross examination of KS on a single issue did not violate Berlanga's rights under the Confrontation Clause.

**4.**

And even if the trial court's limitations on the questioning of KS ran afoul of the Confrontation Clause, this Court would not grant Berlanga a writ of habeas corpus for that reason. Violations of the Confrontation Clause are subject to harmless-error review, *Van Arsdall*, 475 U.S. at 684, and, on federal review of a state-court decision, this means that Berlanga must show that the constitutional violation was not harmless under the standard set out in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), *see McCarley v. Kelly*, 801 F.3d 652, 665 (6th Cir. 2015). Under the *Brecht* standard, "[i]f the court is certain that the error had no or a small effect, the error is harmless." *Tolliver v. Sheets*, 594 F.3d 900, 924 (6th Cir. 2010). But when "'a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless.'" *Id*. (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). The Court does not harbor "grave doubt" that the restriction on the questioning of KS "had substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637. As noted, the premise that Berlanga wished to establish to show that KS's story was false was established through counsel's cross-examination of KS. And Berlanga has not shown that the details of the abuse that he wished to probe would have made it more likely in the jury's mind that KS and SB's allegations of abuse were false.

**B.**

Although Berlanga primarily argues that the trial court's restriction on cross examination abridged his rights under the Confrontation Clause, he also references the constitutional right to present a complete defense. But the showing that Berlanga would have to make to succeed on a complete-defense claim is similar to what he must make to succeed on a Confrontation Clause

8

claim: "The Constitution guarantees a meaningful opportunity to present a complete defense, but not an unlimited right to ride roughshod over reasonable evidentiary restrictions. A defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010) (internal quotation marks and citations omitted). As such, the Court reaches the same conclusion on this complete-defense claim as it does on the Confrontation Clause claim.

## C.

Berlanga also asserts that he is entitled to a writ of habeas corpus because the prosecutor impermissibly vouched for KS's and SB's credibility, or bolstered their testimony, during closing arguments. (R. 1, PID 25.) The Court disagrees.

Given the nature of Berlanga's prosecutorial-misconduct claim, it is necessary to reproduce the prosecutor's closing argument at some length. The emphasized statements are those Berlanga claims were improper:

> It's not been a lengthy trial but you have heard from a lot of witnesses, a lot of witnesses whose testimony you need to sort through. . . . [E]ssentially what you do when you go back there, you go back there as a group and you decide—not myself, not based upon what I'm saying or my arguments or what defense counsel's saying or his arguments, you decide collectively these are what the facts are. You decide this is what we believe, this is what we don't believe. . . .
>
> And in this case, ladies and gentlemen, in making that determination of what the facts are what it boils down to is, do you believe these girls beyond a reasonable doubt or don't you? *Absolutely that's what it boils down to*. . . .
>
> *And what you have to believe ladies and gentlemen, what you have to believe if this was all a way of getting back at dad for being with other women, you have to believe then that [KS] and [SB] then got together and said you know what, [KS], it's about that time, things aren't going so well. Seems like a good time for you to say something to [your sister], or somebody, say something to your family that this is going on, that this happened back in Spring break.*
>
> *You know what, I [SB] think what you should do to add some emphasis, [KS], tell that you don't think you're a virgin anymore, that might get [your sister to buy*

9

*in]. Because then you know [your sister is] going to go back to mom and here we will be -- the police will be there and he'll be out of the house.*

*You have to believe then that the girls said, you know, what's going to make our story more believable? How will they believe us that this happened? Okay, well we'll say we told each other [about our abuse] at an eighth grade dance because if we're telling each other at an eighth grade dance it just makes it seem more credible. And now we'll make sure, [KS], you say that you told me first and that then I told you. But we'll -- I think we should say that we told each other at the eighth grade dance because that's about five or six months before you would have told [your sister]. It just looks better that way, if we would have had this conversation five or six months before. Come on.*

*You have to believe -- and defense counsel says in his opening argument thirteen year old didn't think it would get this far. If you're that cunning, deceptive, manipulative to come up with this plan you're going to think these other things through. And you then have to believe that the girls thought it was a great idea to make this up, say we talked about it in eighth grade, then you tell [your sister] and great, you're throwing up, this just gets even better. Somebody's going to be concerned about you and want to talk to you. Hurray. Come on.*

*These were thirteen year old girls, fourteen year old now, and you know what absolutely when I asked you during voir dire, can you give them the same, amount of weight you would give any other witness, yes, that's what you said. . . .*

*You saw [KS] testify, you saw her emotion. Well, in addition to thinking that they had to come up with all of these great ideas as to how they would come up with this story, you have to believe she's an academy award winning actress, knows when to turn on those tears. What a great show if you -- you have to believe that. . . .*

Even when [KS's] mom comes to her to talk to her about this, to ask her what's going on, because [KS] won't come to her, she wants to give her time after [KS's sister] tells [KS's mom], she – [KS's mom] goes to talk to her daughter and she tells -- (Speaker Interrupted by Coughing) -- was teary eyed just talking about this. *Okay, this is in front of her mom. Not in front of a jury. Is that – is that another act, turn on some water works, I should get upset here so somebody believes me?* She doesn't even want the police involved. Doesn't want it. . . .

[KS] tells you that the very next day the defendant comes to her and again wants to check on her to make sure she's okay because they had just had sex. Or they had almost had sex, I'm sorry, that's a mis-statement. *Well again, is that just something that the girls thought they would add to make their stories more believable?* Somebody who said that, hey, if my dad comes in and apologizes to you make sure you're okay I think that's -- (inaudible) -- really good, might help the story. No. She says it because that's what happened. . . .

10

> [SB] tells you after the Spring break incident that the defendant touches her again. Early morning, he was buzzed, starts at her stomach, moves up to her breasts rubbing. Is that just added effect again? More?
>
> *Maybe I'll talk about another incident because that will make it just seem more powerful. Come on. It doesn't make sense.*
>
> *What makes sense is that those things happened and for whatever reason in those girls' minds they made the decision to not tell until [KS] was ready.* And there came a point in time in October where she got ready. Making a decision to tell but hoping her sister wouldn't betray her trust. . . .
>
> [SB] wrote a letter [saying the abuse did not happen]. She doesn't understand the consequences, it's a snowball effect, you can't get out of?[1] She wrote a letter on her own wanting to stop this. Not because the snowball had gotten too far, because she wanted her life to be back to normal. It was tearing her up inside to see what was happening to her family and she felt like it was her fault.
>
> But then when I talked to her and I asked her those questions, were you told you couldn't take back -- (Speaker Interrupted by Coughing) -- you told that, what's done is done, too bad? *No. I asked her to tell the truth and she said I can't stick by that letter, that is not the truth.*

(R. 6, PID 803–19; *see also* R. 1, PID 26–28.)

The propriety of these emphasized statements are assessed under the following legal standards. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the [prosecutor] behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). "Generally, improper vouching involves either blunt comments" (e.g., "I think the witness was candid") or "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id.*

---

[1] Berlanga's theory was that, given their intoxication, neither KS nor SB were entirely sure if the abuse had occurred, but as the investigation into their allegations progressed further and further, there was a "snowball effect" or "runaway train" preventing KS and SB from being able to back out and admit that they were unsure if abuse had occurred. (*See e.g.*, R. 6, PID 826.)

11

"Bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Id.* at 551.

Applying these standards, the Court finds that none of the prosecutor's remarks rose to the level of improper vouching or bolstering. (Although the state trial court did address Berlanga's prosecutorial-misconduct claim "on the merits" such that 28 U.S.C. § 2254(d) likely applies, for reasons that will be made apparent below, the Court elects to address the claim *de novo*.) Read as a whole, the prosecutor's closing was aimed at showing that Berlanga had implausibly argued that KS's and SB's allegations were false. She did this by repeatedly employing a certain rhetorical tactic: she would recall a particular aspect of KS's or SB's testimony, e.g., that the two first discussed the abuse at an eighth-grade dance, and then essentially ask the jury, "does it seem plausible that KS and SB could make up that detail?" At no point did the prosecutor express her personal belief that what KS or SB said was true. Instead, she would point out why it would be objectively unreasonable to conclude that KS and SB made up a particular aspect of their testimony; for example, "Maybe [SB thinks she'll] talk about another incident because that will make it just seem more powerful. *Come on. It doesn't make sense*." Even the prosecutor's statement, "you have to believe that," is in this vein. Her point was that if KS had made up the allegations of abuse, she would have to be able to cry on point like an actress. *Cf. United States v. Garcia*, 758 F.3d 714, 723–24 (6th Cir. 2014) (explaining, on plain-error review, "The prosecutor's comment—'he told you the truth about what happened that night'—might, in other contexts, be interpreted as a personal endorsement of VanderKlok's candor. Here, however, the remark does not lend itself to that interpretation. Rather, the prosecutor argued that the alleged untruthfulness of VanderKlok's testimony was belied by the ostensibly commonsense conclusion that if VanderKlok had decided to lie, he would have spun a

12

more persuasive yarn."). In all, the Court finds that the prosecutor did not vouch for SB and KS credibility or bolster their testimony during closing arguments.

And even if some of the prosecutor's remarks could be deemed as vouching or bolstering, it would not automatically follow that Berlanga would be entitled to habeas corpus relief. For a prosecutor's improper remarks to rise to the level of a federal constitutional violation, it must be that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168 (1986). The prosecutor's remarks were simply not that egregious. For reasons given, if they were improper, they were at most marginally so. This conclusion, coupled with the fact that the prosecutor reminded the jury that they must decide what to believe "not based upon what I'm saying or my arguments" (R. 6, PID 803), and that the trial court made the same point to the jury (R. 6, PID 151, 153), is enough to conclude that the prosecutor's closing argument did not deprive Berlanga of a fundamentally fair trial.

Thus, on *de novo* review, the Court finds that Berlanga has not shown that the prosecutor's remarks were improper and, even if they were, that the improper remarks rose to the level of a constitutional due-process violation.

In a related argument, Berlanga claims that the prosecutor introduced a fact not in evidence during her closing argument: that Berlanga put his mouth on KS's vagina. (R. 1, PID 24.) But this is not what the prosecutor said. She instead said this: "Well you know what [KS], [says SB,] add some more. Say hey, [KS], is that feeling good, you want me to touch you other places? Say even more and put his mouth on the vagina. Say other things. Amp it up. She's not saying those things, she's not trying to amp it up, she's telling you what she remembers and what she remembers him saying to her." (R. 6, PID 814.) Placed in context then, the fact that Berlanga

13

claims the prosecutor improperly introduced was, in fact, not a fact at all—it was a hypothetical. This claim of prosecutorial misconduct therefore also lacks merit.

### D.

Berlanga also claims he is entitled to habeas corpus relief because his trial counsel was constitutionally ineffective. (R. 1, PID 3.) He says that his counsel's performance was deficient because he failed to (1) contest the trial court's limitation on the questioning of KS about her family's history of sexual abuse (R. 1, PID 17–21), (2) object to the prosecutor's vouching or bolstering of witnesses during closing arguments (R. 1, PID 22–23), and (3) object to the prosecutor's introduction of facts that were not evidence during closing arguments (R. 1, PID 24).

The state trial court addressed each of the arguments "on the merits" as that phrase is used in 28 U.S.C. § 2254(d). In particular, in denying post-conviction relief, the state trial court thought that (1) trial counsel made a reasonable decision not to make further arguments once the trial court permitted general questioning that KS's family members suffered abuse (R. 6, PID 933); (2) that the prosecutor's comments about KS's and SB's testimony were not improper so counsel was not ineffective for failing to object to them (R. 6, PID 935); and (3) that the prosecutor had not introduced facts not in evidence (so, this Court will assume, there was no basis for trial counsel to object) (*see* R. 6, PID 936). Given these "on the merits" determinations, Berlanga must show that the state trial court's decision was "contrary to" or involved an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), or that the state trial court made unreasonable factual determinations in rejecting Berlanga's ineffective-assistance-of-trial-counsel claim. *See* 28 U.S.C. § 2254(d).

Berlanga has not made this showing. The Court has found, on *de novo* review, that Berlanga's confrontation and complete-defense claims lack merit. And even if the Court is wrong about that, the claims are not so strong that it was unreasonable for trial counsel, who had already made his argument, to accept the trial court's ruling that the details of the abuse suffered by KS and her family members were off limits. In other words, not only does the Court find nothing unreasonable about the state trial court's adjudication of this aspect of Berlanga's ineffective-assistance claim—it agrees with it.

As for Berlanga's claim that his counsel was ineffective for failing to object to the prosecutor's remarks during closing arguments, this Court has already concluded, on *de novo* review, that the prosecutor made no improper remarks. And even if some of the remarks were arguably improper, none were so plainly improper that it was unreasonable for counsel to decide not to interrupt the prosecutor's closing argument. It follows that trial counsel was not constitutionally ineffective for failing to object during the prosecutor's closing. And even if that is debatable, there is nothing unreasonable about the state trial court's determination that trial counsel was not ineffective in this regard.

In short, even on *de novo* review, Berlanga's trial counsel's performance was not constitutionally deficient. And, to the extent that conclusion is debatable, this Court must defer to the state-court's resolution of the issue. *See Cullen v. Pinholster*, 563 U.S. 170, 229 (2011) ("We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. When § 2254(d) applies, federal-court review is doubly deferential." (internal citations and quotation marks omitted)).

**E.**

Berlanga also seeks habeas corpus relief on the grounds that his appellate counsel was constitutionally ineffective by failing to raise the following issues on direct appeal: (1) that his trial counsel was constitutionally ineffective, (2) that the trial court "abused its discretion" when it limited the questioning of KS on the issue of her family member's abuse, and (3) that the prosecutor committed misconduct in vouching for KS or SB or bolstering their testimony during closing arguments. (R. 1, PID 32.)

As to appellate counsel's failure to raise the abuse-of-discretion claim on appeal, the state trial court found that because the cross-examination of KS had been properly limited, there was no viable basis for appealing that ruling. (R. 6, PID 934.) For reasons set forth above regarding Berlanga's confrontation and complete-defense claims, it appears that any abuse-of-discretion claim would not have been strong. It follows that the state court's "on the merits" determination that appellate counsel had no viable basis to argue that the trial court abused its discretion was reasonable. *See* 28 U.S.C. § 2254(d)(1).

As to appellate counsel's failure to assert prosecutorial misconduct on appeal, the state trial court found that because there was no prosecutorial misconduct, there was no basis for appellate counsel to claim that on appeal. (*See* R. 6, PID 935.) For reasons provided with respect to Berlanga's claim that trial counsel should have objected to the prosecutor's bolstering and vouching, the Court finds that this "on the merits" determination about appellate counsel's effectiveness to be reasonable. *See* 28 U.S.C. § 2254(d)(1).

Finally, independent of the state trial court's opinion on the issue, this Court has concluded that trial counsel's performance was not constitutionally deficient. And even if this Court is wrong about that, it has no trouble concluding that trial counsel's performance was not

so plainly deficient that constitutionally competent appellate counsel would have made the claim on appeal.

Berlanga is thus not entitled to habeas corpus relief on his claim that his appellate counsel was constitutionally ineffective.

### F.

As his fifth claim for habeas corpus relief, Berlanga makes a "cause" and "prejudice" argument: that appellate counsel's ineffective representation excuses his failure to present the claims of his petition in state court.

Respondent has not asserted procedural default and this Court has addressed the merits of Berlanga's claims. Accordingly, the Court need not and does not address Berlanga's cause-and-prejudice argument.

### G.

Finally, in his reply brief, Berlanga raises a new claim and new argument for habeas corpus relief that he did not raise in his petition (that his trial counsel was biased against those accused of sexual abuse and that the prosecutor made an improper civic-duty argument during her closing arguments). (R. 8, PID 1251–56, 1262.) Doing so is procedurally improper at least because it deprives the Warden of the right to address the new claims. *See Burns v. Lafler*, 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004) ("A court cannot consider new issues raised in a traverse or reply to the State's answer [to a habeas corpus petition]."); *cf. United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989) ("It is impermissible to mention an issue for the first time in a reply brief because the appellee then has no opportunity to respond."). As such, the Court declines to consider them.

### III.

For reasons given, Berlanga's petition for a writ of habeas corpus is DENIED. And the Court does not believe that reasonable jurists could disagree with the above findings or that Berlanga should be encouraged to pursue his claims further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). So the Court will also DENY Berlanga a certificate of appealability. Should Berlanga nonetheless pursue his claims in the Court of Appeals, he may do so without prepaying the filing fee. *See* 28 U.S.C. § 1915(a)(3).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2016

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 7, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson